IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AVA SOLOMON,<br><br>Plaintiff,<br><br>vs.<br><br>ALLSTATE INSURANCE IDEMNITY POLICY 000000886169059, ALLSTATE INSURANCE COMPANY, and ETHAN CHAVEZ,<br><br>Defendants. | 8:23CV207<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Defendant Allstate Fire & Casualty Insurance Company's ("Allstate") Motion to Dismiss Plaintiff Ava Solomon's ("Plaintiff") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss"),[1] Filing No. 43, as well as on initial review of Plaintiff's pro se Second Amended

---

[1] The Court notes that Allstate seeks dismissal of Plaintiff's initial complaint (the "Initial Complaint"), Filing No. 1, as well as her amended complaint (the "First Amended Complaint"), Filing No. 17, and her second amended complaint (the "Second Amended Complaint"), Filing No. 26. Filing No. 43 at 1. However, as the Second Amended Complaint supersedes all earlier complaints, see *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect") (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (citations omitted)), only the Second Amended Complaint shall be addressed here.

Complaint as Plaintiff is proceeding in forma pauperis,[2] to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2)(B).[3]

In its Motion to Dismiss, Allstate argues that dismissal of the case is appropriate as Plaintiff seeks to bring a direct action against Allstate as a liability insurer for a tort committed by their alleged insured which is forbidden under applicable law in the State of Nebraska (and in the State of Nevada where the subject occurrence took place). Filing No. 43. Allstate also argues that even if such an action were cognizable here, Plaintiff does not have standing to bring this suit as she is not authorized as a personal representative to pursue a wrongful death action as is required by Nebraska law.

For the reasons discussed below, the Court finds dismissal of the matter appropriate pursuant to 28 U.S.C. § 1915(e)(2)(B) and for the reasons set forth in the Motion to Dismiss.

## I. FACTUAL AND RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed her Initial Complaint on May 22, 2023, alleging the matter should proceed here under both federal question and diversity jurisdiction, and naming "ALLSATE INSURANCE IDEMNITY POLICY 000000886169059" (the "Allstate Policy"), Allstate Insurance Company ("Allstate"), and Ethan Chavez ("Chavez") as defendants. Filing No. 1 at 1–3. The totality of the allegations set forth in the Complaint were as follows:

> INTENTIONAL INSURANCE TORT VIOLATIONS, DISCRIMINATORY POLICE THAT ABRIDGED THE CVIL LIBERTIES OF ALLA AMERICANS,

---

[2] *See* Filing No. 6 (granting Plaintiff leave to proceed in formal pauperis).

[3] Although the Court previously performed an initial review of the Initial Complaint, the Court reserved the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after Plaintiff amended her Initial Complaint. *See* Filing No. 15 at 8 (informing Plaintiff that the Court reserved the right to perform an initial review of her amended complaint).

> THE DEATH THREATS AND MISUSE OF POLICTICAL OFFICE, RECORDS, AND SETTLEMENT POLICY, BLACK MAIL, WHITE COLLARD PRINCIPLE BEHAVED INCONVENIENCE, THAT DISRIMINATORY PRACTICES, AND THE MISUSE OF INSURANCE IS NOT AN ACT OF GOD BUT GREED AND THE FINEST DISINFRINGEMENT TO ANY RESPECTABLE COMPANY AND OR COMPANY THE MISUSE OF THE UNITED STATES VIA ALLSTATE VIOLATES THE UNITED PRINICIPLES THAT ARE FOREFATHERS TRIED TO PROTECT CIVIL RIGHT, EQUAL RIGHT AND [illegible as cut off][4]

Id. at 4 (spelling as in original).

As relief, Plaintiff sought $200,000 for "ALL LOST WAGES AND EXPENSES PUNITIVE DAMAGES AND PAIN AND SUFFERING AND SECURITY FOR FUTURE YEARS." Id. at 4.

Over the course of the next two months Plaintiff filed multiple documents, see Filing No. 9 (docketed as "PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW"), Filing No. 10 (docketed as "DISCLAIMER regarding SUPPLEMENTAL MOTION to Intervene"), and Filing No. 11 (docketed as "Certificate regarding SUPPLEMENTAL MOTION to Intervene"), with various attachments containing recitations of legal principles, and what appeared to be letters to Allstate referencing an insurance policy denial, which may have been intended to supplement the Complaint. Specifically, one of the attachments references "VEHICULAR MURDER IN THE 1ST DEGREED [sic]," and states that "ETHAN CHAVEZ HAS AN INSURANCE POLICY THAT WAS VALID AT TIME HE KILLED MY SON ALLSTATE 000000886169059." Filing No. 9-2 at 1.

On initial review, the Initial Complaint was found to be "woefully deficient" as there were issues both with the jurisdictional allegations and factual pleading deficiencies.

---

[4] The Court notes it appears the cut off potion of the allegation may read "AMERICAN LIBERTIES." Filing No. 1 at 4.

3

Filing No. 15.  When addressing Plaintiff's federal question jurisdictional allegations this Court found that although Plaintiff alleged that her claims arose under the "civil rights, fair housing, and equal opportunity acts," (which for the purposes of review the Court presumed to reference federal acts), no factual allegations were contained in her Initial Complaint to support such claims.  *Id.* at 4 (citing Filing No. 1 at 3).  In addressing diversity jurisdiction, this Court noted that while it was plausible her case could proceed in diversity, her allegations against Allstate were incomplete, and she had omitted any citizenship allegations for defendant Chavez.  *Id.* at 5.  In relation to the factual pleading deficiencies, this Court found that Plaintiff's Initial Complaint contained "no allegations of who did what to whom, nevertheless when the alleged wrongful conduct took place" and little indication of the nature of the suit aside from Plaintiff selecting the check boxes for "insurance" and "car accident" on the civil cover sheet form.  *Id.* at 6–7.  Plaintiff was instructed to file an amended complaint that clearly states a claim upon which relief may be granted and that a failure to do so would result in dismissal of her claims against Defendants without further notice.  *Id.* at 8.

On August 17, 2023, Plaintiff filed her First Amended Complaint which appeared to be largely identical to the Initial Complaint, containing identical narrative and signature pages.  *Compare* Filing No. 1 *with* Filing No. 17.  Along with her First Amended Complaint she attached what appeared to be a draft complaint that differed from the First Amended Complaint (the "Attachment").  *See* Filing No. 17-1.

Several days later on August 31, 2023, Plaintiff filed her Second Amended Complaint,[5] alleging her case may proceed via this Court's diversity jurisdiction and

---

[5] Plaintiff indicated the Second Amended Complaint was a hard copy of the Attachment which she prematurely filed on August 17.  Filing No. 25 at 1.  Plaintiff also simultaneously filed a duplicate of the

4

naming Allstate Insurance and Chavez as defendants. Filing No. 25 at 2–4. Specifically, Plaintiff alleges she is a citizen of Nebraska, Chavez is a citizen of Nevada, and Allstate is a Texas Corporation with is principal place of business also in Texas. Filing No. 25 at 4–5. The totality of Plaintiff's claim in the Second Amended Complaint is stated as follows: "Allstate Insurance, insuree Ethan Chavez the insured has be charged with vehicular homicide. In Clark County Detention Center his charged has been upgraded. 2X. The homicide has cost the family over $48,000 in funeral and medical expenses alone." Filing No. 25 at 5 (spelling in original, capitalization omitted).

On the same date the Second Amended Complaint was filed, counsel for defendant Allstate entered an appearance into the case, Filing No. 21, and sought additional time to file a responsive pleading, Filing No. 22, which was granted, Filing No. 24 (text order). Allstate was allowed through and until October 20, 2023, to file a responsive pleading. *Id.* (text order).

During August and September of 2023, Plaintiff filed three motions on state court forms titled "Ex Parte Motion for Deny Defendant Case Dismissal Motion Under rule 34.31," Filing No. 27, Filing No. 28, and Filing No. 29, six filings docketed as "joint" notices and motions filed "in the matter of the estate of Armani Stephen Williams," on forms for the County Court of Douglas County, Nebraska, titled "Demand for Notice," Filing No. 32, "Statement of Claim," Filing No. 33, "Release of Claim," Filing No. 34 and Filing No. 37, and "Demand for Notice," Filing No. 35 and Filing No. 36. All of the motions were denied without prejudice as either premature, or because they were found not to be motions but

---

Second Amended Complaint, Filing No. 26, which was docketed as a motion and subsequently denied without prejudice by the Court on October 6, 2023, Filing No. 40.

5

to be notices and acknowledgements, or because they were not properly before this Court as they were filed on state court forms. Filing No. 40.

On October 19, 2023, Allstate filed its Motion to Dismiss currently before this Court, Filing No. 43, and a brief in support, Filing No. 44. The following day this Court entered an order, Filing No. 45, responding to additional motions Plaintiff filed on October 11, Filing No. 41 and Filing No. 42, which this Court construed as motions for status. In addressing the status motions the Court informed Plaintiff that she had through and until November 9, 2023, to file a brief in response to the Motion to Dismiss or file a motion to extend time to respond. Filing No. 45 at 2. To date, Plaintiff has not filed a response in opposition to the Motion to Dismiss nor has she participated in the case since filing her motions for status on October 11, 2023.

## II. DISCUSSION

While the nature of Plaintiff's claims remains unclear from the allegations in her Second Amended Complaint, it appears from the allegations in the various complaints previously filed and narrative contained in other filings made by Plaintiff in this action that Plaintiff's son Armani Stephen Williams ("Williams") was involved in an incident with a motor vehicle driven by defendant Chavez resulting in William's death and criminal charges being brought against Chavez in Clark County, Nevada. And, as a result of the incident involving Williams, Plaintiff, as Williams' mother, now brings what appears to be a wrongful death action against Allstate and Chavez under the policy of insurance allegedly issued by Allstate providing coverage to Chavez, and seeking damages under that same policy. *See* Filing No. 1, Filing No. 7-1, Filing No. 7-2, Filing No. 8, Filing No. 8-1, Filing No. 9 at 2, Filing No. 9-2, Filing No. 9-4, Filing No. 9-5, Filing No. 10-5, Filing

No. 11-1, Filing No. 11-2, Filing No. 12, Filing No. 16, Filing No. 17, Filing No. 25, Filing No. 26, Filing No. 38, and Filing No. 39.

The Court now performs its initial review pursuant to 28 U.S.C. § 1915(e) and considers the arguments set forth in the unopposed Motion to Dismiss.

**A. Initial Review**

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). While "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties," *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted), pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or their complaint shall be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Upon review, Plaintiff's Second Amended Complaint still fails to meet this minimal pleading standard. Specifically, while Plaintiff's Second Amended Complaint contains a more detailed damages request than her prior complaints, it still contains no allegations of who did what to whom or when any of the alleged violations occurred. *See* Filing No. 25. Instead, as discussed *supra*, in an effort to understand that nature of the allegations this Court has had to scour multitudes of filings by Plaintiff and consider the facts as stated by Allstate in its Motion to Dismiss to determine how the named parties are involved and the claims at issue. Plaintiff continues to make only vague and factually unsupported references to Chavez having been charged with vehicular homicide, a reference to something happening in Clark County, Nevada, and funeral costs apparently paid for by Plaintiff, *see id.* at 5, but provides no additional detail about the nature of her claims or any factual support for them. Put another way, aside from clarifying her jurisdictional allegations, Plaintiff's Second Amended Complaint is as woefully deficient as the Initial Complaint as it contains no allegations of who did what to whom, nor even when the alleged wrongful conduct took place or why Plaintiff is entitled to relief.

While this Court can allow Plaintiff to again amend to correct these deficiencies, for the reasons provided in the next section of this Order addressing the Motion to Dismiss, allowing Plaintiff additional time to correct these deficiencies or otherwise amend would be futile.

**B. The Motion to Dismiss**

Allstate filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging dismissal of Plaintiff's case is appropriate as Plaintiff failed to state a claim upon which relief can be granted. Filing No. 43.

"Dismissal under Fed. R. Civ. P. 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Cronin v. Peterson*, 288 F. Supp. 3d 970, 981 (D. Neb. 2018) (internal quotations omitted). Motions to dismiss under Rule 12(b)(6) allow parties to "test the legal sufficiency of the pleadings." I*n re Am. River Transp. Co.*, 728 F.3d 839, 848 (8th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009)).

"The standard for a district court to employ in ruling on a motion to dismiss is clear." *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). "A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Id.* (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)).

"A motion to dismiss should be granted 'as a practical matter . . . only in the unusual case in which there is some insuperable bar to relief.'" *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (citing *Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (quoting *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974))). Indeed, "dismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"

*McCormack v. Citibank*, N.A., 979 F.2d 643, 646 (8th Cir. 1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

Here, Allstate argues that two separate grounds exist which require dismissal of this suit in its entirety: (1) Plaintiff lacks standing to bring suit, and (2) Both Nebraska and Nevada state law forbid Plaintiff from bringing a "direct action" suit against a liability insurance carrier such as Allstate based on the negligence of the insured. Filing No. 43. Upon review this Court finds Allstate is correct on both bases.

### a. *Plaintiff lacks standing to pursue a wrongful death suit where she is not formally named the personal representative of the decedent.*

As previously discussed, it appears from a review of the pleadings and papers filed by Plaintiff in this matter that Plaintiff seeks to bring a wrongful death suit against Allstate and its insured, defendant Chavez, for the death of Plaintiff's son in a vehicular incident which took place in Clark County Nevada.

"[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas,* 495 U.S. 149, 154 (1990). In this instance the Court therefore must first determine whether Plaintiff, as the decedent's mother, has standing to allege a wrongful death claim. *Anderson v. Nguyen*, No. 8:18CV248, 2018 WL 3553355, at *2 (D. Neb. July 24, 2018).

"A cause of action based on damages stemming from the death itself of a human being 'inures solely to the next of kin, and exists only by virtue of the wrongful death statutes.'" *Id.* (quoting *Corona de Camargo v. Schon*, 776 N.W.2d 1, 9 (Neb. 2009)); *see also* *Mader v. United States*, 654 F.3d 794, 808 (8th Cir. 2011) (holding that under Nebraska law, only a personal representative may file a wrongful death action). Nebraska

Revised Statute § 30-809 authorizes actions for wrongful death in Nebraska. Pursuant to Nebraska Revised Statute § 30-810, every action described in § 30-809 shall be "brought by and in the name of [the decedent's] personal representative for the exclusive benefit of the widow or widower and next of kin." Under Nebraska law "to acquire the powers and undertake the duties and liabilities of a personal representative of a decedent, a person must be appointed by order of the court or registrar, qualify and be issued letters." Neb. Rev. Stat. § 30-2403.

Therefore, when a plaintiff brings a wrongful death action in Nebraska he or she must first obtain personal representative status via court order. When such status is not obtained or when a party fails to present evidence that he or she is appointed as personal representative of the decedent (and that the appointment is valid), and that same party attempts to file a wrongful death suit, the Eighth Circuit has held that party "does not have standing to assert the wrongful death claim at issue."[6] *Mader*, 654 F.3d at 808.

Here, Plaintiff does not allege or provide any evidence she has been appointed as personal representative for her deceased son. Therefore, Plaintiff lacks standing to proceed on her wrongful death claim and this matter should be dismissed without prejudice for failure to state a claim upon which relief may be granted. *Wells v. Norfolk Reg'l Ctr.*, No. 8:10CV301, 2010 WL 5018588, at *2 (D. Neb. Dec. 2, 2010) (authorizing dismissal of claim where plaintiff had not submitted any evidence that the plaintiff was the personal representative of his son's estate). While Plaintiff could cure this deficiency by providing evidence that she has been appointed her son's personal representative or by

---

[6] The *Mader* court noted that while the dissent's argument that the cause of action, not a plaintiff's standing, is undermined when a plaintiff brings a wrongful death suit but is not a valid personal representative, "the result is the same," as dismissal is still allowed under any basis supported by the record. *Mader*, 654 at 808, n. 12 (citing *Phipps v. FDIC*, 417 F.3d 1006, 1010 (8th Cir. 2005)).

substituting the personal representative of her son's estate as the plaintiff in this case, the suit Plaintiff brings is a non-cognizable "direct action" suit, as discussed in the next section, and, thus, amendment of the Second Amended Complaint is futile.

### b. *Plaintiff's "direct action" claim against Allstate cannot proceed under both Nebraska and Nevada law.*

It is well-established that Nevada law does not permit an unfettered, direct cause of action against an insurance provider by a third party.[7]  Nebraska law similarly provides as follows: "[A]s a general rule, there is no privity between an insured person and the tortfeasor's liability insurer.  For this reason, direct actions against liability insurance carriers based on the negligence of the insured are not permitted in Nebraska." *German Mut. Ins. Co. of Dodge County v. Federated Mut. Ins. Co.*, 606 N.W.2d 856, 859 (Neb. App. 2000) (citing Medical Protective Co. v. Schrein, 582 N.W.2d 286, 290 (Neb. 1998)).[8]

As previously noted, this Court's exercise of jurisdiction over this dispute is predicated upon the parties' diversity of citizenship pursuant to 28 U.S.C. § 1332.  It is well-established that in diversity of citizenship cases, the district court must apply the choice of laws rules of the state in which it sits.  *Perkins v. Clark Equip. Co., 823 F.2d 207,*

---

[7] Recently the Nevada Court of Appeals reiterated that Nevada "is not a direct action state" and therefore a third party plaintiff seeking to maintain claims directly against a liability insurer could not proceed. *Law v. Progressive Direct Ins. Co.*, 533 P.3d 746 (Nev. App. 2023) (citing *Hall v. Enterprise Leasing Co.-W.*, 137 P.3d 1104, 1109 (2006) (internal quotation marks omitted)).  Even when a complaint can be read as alleging that a liability insurer acted in bad faith in the handling of an insurance claim for their insured, resulting in alleged injury to a third party, Nevada courts have found such a claim constitutes a direct action and is "not permitted under Nevada law, without first having successfully brought an action against [the liability insurer's] insured and then receiving an assignment from the insured to bring such a claim." *Id*. (citing *Gallegos v. Malco Enters., of Nev., Inc.*, 255 P.3d 1287, 1289 (2011) (citing *Wilson v. Bristol West Ins. Group*, 2009 WL 3105602, at *2 (D. Nev. Sept. 21, 2009))).  As such, the Nevada appellate court recognized that "although Nevada does not recognize a private right of action by a third-party claimant against an insurance company for bad faith, a third-party claimant may bring a claim for bad faith with a proper assignment of rights." *Id*.

[8] While Nebraska law does allow direct actions where an insurer is insolvent or bankrupt, *see Molina v. Am. Alternative Ins. Corp.*, 270 Neb. 218, 699 N.W.2d 415, 419 (2005) (citing Neb. Rev. Stat. § 44–508), this exception does not apply here.

208 (8th Cir. 1987). However, in this instance this Court need not determine whether Nebraska or Nevada law applies as both Nebraska and Nevada law forbid Plaintiff's direct-action suit in an instance such as this where Plaintiff, as a third party, seeks to sue a liability insurance provider.

As such, even if Plaintiff had standing to bring suit as personal representative for her deceased son, there are no circumstances present which would allow her to bring suit to obtain damages under an insurance policy her son was not a party to in either Nevada or Nebraska. As her direct action claim cannot proceed, her suit must be dismissed.

IT IS THEREFORE ORDERED that:

1. The Motion to Dismiss, Filing No. 43, is granted. This case shall be dismissed without prejudice for failure to state a claim on which relief may be granted.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 2nd day of August, 2024.

BY THE COURT:

*Joseph F. Bataillon*

Joseph F. Bataillon
Senior United States District Judge